**STATE**

v.

**Robert RIOUX.**

No. 97–270–C.A.

Supreme Court of Rhode Island.

March 17, 1998.

Andrea J. Mendes, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal concerns the sufficiency of evidence to establish a probation violation when the complaining witness recants her prior inculpatory statements to the police concerning the defendant's alleged misconduct. The defendant, Robert Rioux, appeals from a Superior Court adjudication finding him to be in violation of his probation relating to a host of prior criminal convictions and ordering him to serve seven years in prison on a previously suspended sentence and twenty-eight months concurrently on another. The defendant appeals from the Superior Court's judgment following a violation hearing, alleging various evidentiary errors and the lack of reasonably satisfactory evidence of a probation violation. This court ordered the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering their arguments, we conclude that no cause has been shown and proceed to decide the appeal without further briefing or argument.

The complaining witness at defendant's violation hearing was his former girlfriend, Jennine Shellman (Shellman). Shellman testified that she called police on the afternoon of December 19, 1996, to report a domestic assault. Officer Robert Motose (Motose) of the Middletown police department responded to the call. Shellman informed the officer that two days previously she had argued with defendant and that during their argument defendant had grabbed and pummeled her,

thereby bruising her body. Shellman showed Motose the bruises on her chest and arms and told him that she also had bruises on her legs. Shellman also completed a domestic-violence reporting form in which she indicated the locations of her injuries.

At Rioux's violation hearing, however, Shellman testified that she lied to Motose when she informed him that defendant had attacked and beaten her. She stated that she and defendant had argued on the day in question but that defendant departed without striking her and did not return. She stated that she attempted to contact defendant two days later but was unsuccessful. Shellman claimed that her friends had told her that defendant had become involved with another woman. As a result of this disclosure, she said that she became angry, called the police, and made up the story about having been attacked by defendant. Shellman stated that she received the bruises not at the hands of defendant but during an altercation at a bowling alley with an ex-friend named Tiffany Bell. And she claimed that she never reported this assault to the police because she was intoxicated at the time of the fight and because she was the person who had "started it."

Motose testified that he responded to a complaint of a domestic disturbance on December 19, 1996, at Shellman's home. He said that Shellman told him at that time that during an earlier argument with defendant on the seventeenth of December, defendant had smashed the phone and had shoved, grabbed, and beaten her. Motose stated that he observed the complainant's bruises and photographed them. He also testified that he completed a domestic-violence form based upon the statements of the complaining witness on that day. The form indicates that the victim reported a physical battery by defendant and that she had been previously attacked, on December 13, 1996.

The hearing justice reviewed this evidence and concluded that he was reasonably satisfied that defendant had violated the terms and conditions of his probation. He found that Shellman's hearing testimony denying the December 17 incident was not credible

and determined that she in fact had been battered by defendant. In arriving at his decision, the hearing justice discussed a pattern of conduct that he had observed in people who have suffered beatings at the hands of "significant others." He commented that the victims, usually female, frequently attempt to recant their previous accusations after reflecting upon the adverse consequences to the batterer.

 It is well settled that this court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation. *State v. Sparks,* 667 A.2d 1250, 1251–52 (R.I.1995); *In re Lamarine,* 527 A.2d 1133, 1135 (R.I.1987). It is not the function of this court to weigh the credibility of witnesses in a probation-violation hearing; that task is for the hearing justice to perform. *Sparks,* 667 A.2d at 1251; *Walton v. Baird,* 433 A.2d 963, 964 (R.I.1981).

 The defendant contends that the hearing justice acted arbitrarily and capriciously in refusing to accept another pattern of conduct that exists in these situations. In that pattern, argues defendant, a scorned woman invents a tale of abuse and calls police in order to exact revenge upon her unfaithful boyfriend or spouse. The defendant insists that this is precisely what occurred in the present case and that Shellman's recantation testimony supports this argument. The hearing justice determined, however, that Shellman's in-court disavowal of the beating had been newly fabricated in order to prevent defendant from being adjudged a violator and returning to prison. The hearing justice noted that he had heard hundreds of domestic-violence cases in his years on the bench and had passed on the credibility of over a thousand witnesses. It does not appear to us that the hearing justice acted arbitrarily in this regard merely by drawing upon his lengthy experience as a trial justice.

The defendant further complains that the hearing justice reached a conclusion in this case concerning Shellman's credibility before he had heard all the evidence. The defendant points to a portion of the hearing transcript in which the trial justice admonished defense counsel to discontinue questioning Shellman concerning conversations that had occurred between counsel and the witness. Prior to this admonition Shellman testified (in response to defense counsel's cross-examination) that she had contacted the Office of the Public Defender, seeking advice on what could be done to drop the charges against defendant. The state's attorney objected to this line of questioning, and the trial justice indicated that defense counsel should confine her cross-examination to points addressed on direct examination. We are of the opinion that the hearing justice's comments to defense counsel were not an attempt to foreclose proper cross-examination but rather were designed merely to prevent defense counsel from eliciting testimony from the witness concerning conversations between counsel and the witness that the court found irrelevant and unresponsive to the testimony adduced on direct examination. We also note that counsel was permitted to continue questioning the witness concerning her attempts to drop a no-contact order that had been in place. Thus we are unable to conclude that the trial justice improperly impeded the cross-examination of this witness or arbitrarily rendered a credibility determination before hearing all the evidence.

 The defendant next claims that the hearing justice imposed an erroneously low burden of proof in determining that he was reasonably satisfied that defendant had violated his probation. The defendant contends that the standard of proof applied by the hearing justice may have deprived him of due process; however, defendant cites no case law to support this proposition. It is well settled that a probation-violation hearing is not part of the criminal-prosecution process and that an alleged violator is not entitled to the full panoply of due-process rights. *State v. Olsen,* 610 A.2d 1099, 1103 (R.I.1992). For this reason, even though the prosecution is not required to prove its case beyond a reasonable doubt, it must show that a defendant violated a condition of his or her probation by evidence that indicates to the trial justice's "reasonable satisfaction" that such a violation occurred. *Id.*

The defendant quotes a portion of the violation decision in which the hearing justice expressed uncertainty about the precise definition of "reasonably satisfied." The hearing justice opined that it suggested "an extremely low standard that does not take much to satisfy." He even went on to quip, "I can be reasonably satisfied by a hot dog on occasion." Notwithstanding the apparent flippancy of this remark, the hearing justice carefully considered all the evidence presented. He noted that the victim's bruises on her forearms, which the police officer observed and discussed in his testimony, were not consistent with injuries resulting from a bar fight but were more in the nature of defensive bruises. He also noted that in his experience Shellman's testimonial flip-flop about the events of December 17 likely betrayed a motive to insulate defendant from the consequences of his domestic violence. When a probation-violation inquiry turns on a determination of credibility, as it did in this proceeding, and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred. *See State v. Gilroy,* 688 A.2d 858, 859 (R.I.1997); *State v. Sikhaolouanglath,* 683 A.2d 376, 378 (R.I.1996).

The hearing justice concluded that he was "more than reasonably satisfied" that defendant had violated his probation by battering Shellman. He further stated that he made this finding "without any legal question" in his mind. Although the hearing justice did describe the state's burden of proof as "extremely low" at one point in his decision, he did not otherwise explain or qualify his understanding of the reasonably satisfied standard. In any event, based upon our review of the proceedings, we are convinced that the evidence before the trial justice more than satisfied the standard for establishing a probation violation. Because the hearing justice correctly articulated the standard to be applied to probation-violation determinations

and because the record shows that in any event the preponderance of the evidence indicated that defendant had violated the terms of his probation, we are persuaded that the standard actually applied by the hearing justice in finding defendant to be a violator was the proper one.

The defendant also raises two evidentiary questions.[1] First, defendant argues that it was error to allow the police officer to testify that he had previously responded to a domestic-disturbance call from a neighbor and had spoken to Shellman approximately one week before she filed the report against defendant. At that time Shellman denied that a disturbance had occurred, and told the officer that she and defendant merely had had an argument. The defendant objected to the police officer's testimony on the grounds of relevance. The state counters that this evidence was previously admitted without objection through Shellman's testimony. In that earlier testimony, Shellman had stated that a police officer came to her home on the twelfth of December in response to a call from a "nosey neighbor" and that she told the officer that she had not been battered and that she was not in fear of defendant.

This court has held that strict application of the rules of evidence is not required at a probation-violation hearing. *See State v. Casiano,* 667 A.2d 1233, 1239 (R.I. 1995); R.I. R. Evid. 101(B)(3) (formal rules of evidence do not apply to "proceedings on probation or parole violations"). Although the hearing justice mentioned the police officer's testimony in his decision, it does not appear to serve as a significant basis for his violation determination. In addition, evidence of the prior call to police had been admitted previously through the complaining witness; and the testimony of the officer did not vary significantly from Shellman's testimony. As a result we conclude that it was not reversible error to admit the police officer's testimony.

Finally, the defendant contends that the hearing justice erred in allowing the com-

---

1. The state contends that neither of these issues was properly preserved for review. We cannot agree. Our review of the record indicates that

defense counsel registered her timely and specific objections.

plaining witness to be questioned regarding her statements to the police officer on December 19 in which she alleged that the defendant had beaten her. The defendant argues that these statements, having been elicited before she recanted her allegations against the defendant, were inadmissible hearsay not falling within the purview of R.I. R. Evid. 801(d)(1)(A). Under the Rules of Evidence any statement other than one presently made by the declarant while testifying at the trial or hearing, which is offered to prove the truth of the matter asserted, is considered hearsay and is generally inadmissible. *See* Rule 801(c). A witness's prior statement is not hearsay, however, if the witness-declarant is subject to cross-examination concerning the statement and the statement is inconsistent with the witness's testimony. Rule 801(d)(1)(A). As previously noted, the hearsay rules do not apply in probation-revocation hearings.[2] Accordingly the trial justice did not err in considering Shellman's prior statements. But even if there were some requirement that the state elicit a present inconsistency before a testifying declarant could be examined concerning a prior inconsistent statement—a proposition of law for which the defendant provides no authority and upon which we express no opinion at this juncture [3]—it is clear that any putative error was harmless. The exact same testimony would have come out a short time later during the state's direct examination following Shellman's in-court denial that any domestic abuse had occurred. Thus, because the same evidence would have been presented to the trial justice in any event, the ordering of the questioning made absolutely no difference to the result in this particular proceeding.

2. We note that defendant's confrontation rights were not jeopardized during this probation-violation hearing. *See State v. Bourdeau,* 448 A.2d 1247, 1249 (R.I.1982) (confrontation rights may limit general rule that hearsay evidence is admissible in probation hearing). Here the declarant was available to testify at the hearing and was in fact cross-examined (effectively, we might add) by defendant.

3. In our decisions in *State v. Oliveira,* 576 A.2d 111 (R.I.1990), and *State v. Coppola,* 502 A.2d

For the foregoing reasons the defendant's appeal is denied, and the judgment of the Superior Court is affirmed.

BOURCIER, J., did not participate.

802 (R.I.1985), we noted that under our present and former rules of evidence the admission of a prior inconsistent statement requires testimony "against which the prior statement may be juxtaposed," 576 A.2d at 114, to appear "in the course of the trial." 502 A.2d at 804. However, we gave no indication there in regard to the proper ordering for the presentation of such evidence—a matter that is usually left to the sound discretion of the trial justice. *See* R.I. R. Evid. 611.