STATE

v.

Terrence SYLVIA.

No. 2004–152–C.A.

Supreme Court of Rhode Island.

May 5, 2005.

Virginia M. McGinn, Providence, for Plaintiff.

Janice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, Terrence Sylvia, appeals from a Superior Court judgment revoking four previously suspended sentences and sentencing him to serve eight years at the Adult Correctional Institutions (ACI) for violating the terms of his probation.[1] This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated below, we affirm the judgment of the Superior Court.

---

1. Mr. Sylvia originally was convicted on November 14, 1994, after pleading *nolo contendere* on two counts of delivery of a controlled substance and two counts of conspiracy to violate the Rhode Island Controlled Substances Act, G.L. 1956 chapter 28 of title 21. He was sentenced to twelve years on each count, with two years to serve, and ten years suspended, with probation. The sentences were *to run concurrently.*

## Facts and Procedural History

On January 5, 2003, Mark Sullivan was shot while wrestling with an assailant who had demanded, at gunpoint, that he (Sullivan) hand over a certain quantity of morphine that he possessed. According to Sullivan, the events preceding this shooting were as follows. Sullivan, a four-year veteran of the Marine Corps, was being treated for cancer at the Veterans Administration Hospital in Providence. As part of his treatment, he received prescriptions for morphine, OxyContin, and lorazepam. It was often his practice, however, to trade his morphine prescription for cocaine or marijuana at the Dexter Manor in Providence.

On the day of the shooting, after ingesting three tablets of morphine and at least two of lorazepam, Sullivan set out on just such a mission. Upon arriving at Dexter Manor, he immediately went to his friend Abraham Jeffries's apartment on the eighth floor. While he was there, two men and a woman unknown to Sullivan arrived and stayed for five or ten minutes. At trial, Sullivan identified defendant Terrence Sylvia as one of the men. He also identified the woman as Renee Green; he could not name the second male, however. Sullivan asked the group whether they had any cocaine, and "They said no." The group then left the apartment, and Sullivan left shortly thereafter.

Sullivan next went downstairs to the fifth floor to the apartment of Eddie Green, whom he described as "[a]n associate of mine, an acquaintance." When he arrived, the same trio of strangers was there, as well. He again asked them whether there "was [ ] any cocaine available for trade," indicating that he had the prescription medication on his person. Receiving a similar negative response, Sullivan left Eddie Green's apartment.

Sullivan soon "panicked," however, when he noticed the three strangers quickly exit the apartment. He headed toward a friend's apartment on the ninth floor, but mistakenly knocked on the wrong door. According to Sullivan, "the girl" (Renee Green) then approached him and asked him for some morphine. Sullivan said "no," and proceeded down the hallway toward the elevator and stairwell. Sullivan said that he could see Sylvia and the other man standing at the end of the hallway.

Sullivan testified that defendant followed him into the stairwell, and that the door closed right behind them, leaving the two of them alone in the stairwell. Sylvia asked to see what Sullivan had. Sullivan held up the morphine, and Sylvia said, "Give it to me." Sullivan said "No," whereupon Sylvia raised a semiautomatic handgun to Sullivan's head. Sullivan reached for the gun and attempted to dislodge the clip. As he did so, a bullet discharged into his left bicep area. The pair continued to struggle as they descended a flight of stairs, during which the weapon discharged two more times. Sullivan was then able to extricate himself and return to Jeffries's apartment to seek assistance.

Renee Green also testified at the probation-revocation hearing. She said that on the day of the shooting she was "hanging out" with defendant at Eddie Green's apartment when two men she did not know entered. She identified the two men as Mark Sullivan and Troy Antley. According to Ms. Green, Sylvia, Sullivan, and Antley had a discussion in the bathroom, and then all three left the apartment. Ms. Green followed them up to the eighth floor. She said she followed Sullivan and Antley into the stairwell, where she asked Sullivan whether she could speak to him for a few minutes. Antley told her to leave, so she stepped back into the hallway

where defendant was standing. She further testified that defendant said under his breath, "He has a gun," and she then heard three shots fired. Ms. Green acknowledged that her testimony was inconsistent with a statement that she had given to the police on January 22, 2003, in which she said that it was defendant who was in the stairwell with Sullivan when the shots were fired.

At the conclusion of the hearing, the hearing justice said that he was "more than satisfied" that defendant was the assailant. He therefore revoked the previously suspended sentences, and sentenced him to serve eight years at the ACI. Although defendant prematurely appealed from the judgment of conviction and commitment, which was not entered until June 1, 2004, we will treat his appeal as timely filed.[2]

### Standard of Review

This Court's "review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998); *see also State v. Waite*, 813 A.2d 982, 984 (R.I.2003); *State v. Pagan*, 793 A.2d 1046, 1046–47 (R.I.2002) (mem.). Additionally, "[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court." *Waite*, 813 A.2d at 985 (citing *State v. Hull*, 754 A.2d 84, 86 (R.I.2000)). Furthermore, this Court has stated that:

> "When a probation-violation inquiry turns on a determination of credibility, * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons

stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *Rioux*, 708 A.2d at 898 (citing *State v. Gilroy*, 688 A.2d 858, 859 (R.I.1997); *State v. Sikhaolouanglath*, 683 A.2d 376, 378 (R.I. 1996)).

It is well settled that the burden of proof in a probation-revocation hearing is considerably lower than in a criminal case. *Pagan*, 793 A.2d at 1047; *Rioux*, 708 A.2d at 897. In a probation-revocation hearing, instead of establishing proof beyond a reasonable doubt, "the state is only required to prove to the reasonable satisfaction of the hearing justice that the defendant has violated the terms and conditions of the previously imposed probation." *State v. Anderson*, 705 A.2d 996, 997 (R.I. 1997) (mem.); *see also Rioux*, 708 A.2d at 897. Moreover, "[k]eeping the peace and remaining on good behavior are conditions of probation," and the sole purpose of a probation-revocation proceeding is for the trial justice to determine whether these conditions have been violated. *Waite*, 813 A.2d at 985; *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.). Consequently, the "reasonably satisfied standard * * * should be applied to whether defendant maintained the conditions of his probation" and not to the issue of the defendant's guilt with respect to the new charges. *Waite*, 813 A.2d at 985.

### Discussion

The thrust of defendant's argument on appeal is that, notwithstanding the reduced burden of proof that obtains at a probation-revocation hearing, the evidence

---

**2.** An appeal filed after an oral decision, but before entry of a final judgment, may be treated as timely "[i]n the interests of justice and

to avoid undue hardship." *State v. Ibrahim*, 862 A.2d 787, 793 (R.I.2004) (quoting *Russell v. Kalian*, 414 A.2d 462, 464 (R.I.1980)).

adduced against him was nevertheless insufficient to show that he violated the terms of his probation. Thus, he asserts, the hearing justice acted arbitrarily and capriciously.

The crux of his contention is that Sullivan was not a credible witness. Sullivan had ingested both morphine and lorazepam that "had to have had some significant effect on his abilities to observe and recall." He gave inconsistent descriptions of what his assailant was wearing. He also testified on direct examination that he will never forget the shooter's eyes; yet, he failed to notice a cataract in his left eye and a horseshoe scar on his forehead. In addition, Sullivan described the shooter as wearing a distinctive buckskin hat with flaps covering his ears, yet a Dexter Manor surveillance photograph appears to depict a man other than defendant wearing such a hat. Further, Sullivan acknowledged that he falsely testified at the hearing about what Antley was wearing because he was "nervous."

Although there were inconsistencies in Sullivan's description of what his assailant was wearing, the hearing justice, nonetheless, was reasonably satisfied that Sullivan's portrayal of the events and his identification of defendant as the shooter were accurate. Renee Green's account of the incident in her police statement, including the location of defendant at the time of the shooting, was consistent with Sullivan's version of the events. Further, upon viewing photo arrays, Sullivan immediately identified defendant as the shooter and Renee Green as the woman involved.

The defendant also argues that the hearing justice improperly relied upon defendant's prior contacts with the criminal justice system to buttress the state's proof. He maintains that the hearing justice drew

an inference, predicated largely upon defendant's criminal record, that defendant had gone to Dexter Manor that day to pursue a drug transaction. This, he contends, is in contravention of Rule 404(b) of the Rhode Island Rules of Evidence that prohibits the admission of evidence of "other crimes, wrongs, or acts * * * to prove the character of a person in order to show that the person acted in conformity therewith."

We have reviewed the record and find defendant's contentions to be without merit. Rather, we are satisfied that the hearing justice properly weighed and considered the evidence presented and found that the testimony of the complaining witness identifying defendant as his assailant was credible. He found compelling the consistency between the testimony of the victim and the statement given to the police by Renee Green on January 22, 2003, particularly the fact that both identified Sylvia as the other person in the stairwell at the time Sullivan was shot.

■ It is well established that "[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court." *Waite*, 813 A.2d at 985. On the basis of the record before us, we conclude that the hearing justice did not act arbitrarily or capriciously in crediting the testimony of Mark Sullivan and his identification of defendant as his assailant.

■ The defendant's contention that the hearing justice impermissibly relied upon the defendant's previous contacts with the criminal justice system in violation of Rule 404(b) also is unavailing. We first observe that the rules of evidence are not strictly applied in a probation-revocation hearing.[3] Moreover, the record dis-

3. "[A] 'probation-revocation hearing is not      part of a criminal prosecution and therefore

closes that the hearing justice considered the defendant's criminal history only with respect to the issues of bail and sentencing, after he had revoked the suspended sentences. He drew the inference that illicit drug dealing was afoot that afternoon at Dexter Manor, not from the defendant's record, but from the activities of the defendant, Sullivan, Antley, and Renee Green. The fact that in fashioning an appropriate sentence the hearing justice concluded from the defendant's history of twenty-seven contacts and nine convictions—several, but not all, for drug-related offenses—that Sylvia was a drug dealer does not by one whit negate his finding that the defendant violated the conditions of his probation.

## Conclusion

Thus, we conclude that the trial justice acted neither arbitrarily nor capriciously in considering the evidence and in determining that, despite apparent inconsistencies, there existed reasonably satisfactory evidence to support a finding that the defendant had violated the conditions of his probation. Accordingly, the judgment of the Superior Court is affirmed. The record shall be remanded to the Superior Court.

does not give rise to the full panoply of rights that are due a defendant at trial.' * * * A probation-revocation hearing is not a prosecution that seeks to convict the defendant for the alleged violation, but, rather, a 'continuation of the original prosecution for which probation was imposed.' " *State v. Gautier,* 871 A.2d 347, 358–59 (R.I.2005) (quoting *State v. Chase,* 588 A.2d 120, 122 (R.I.1991)). Moreover, under Rule 101(B)(3) of the Rhode Island Rules of Evidence, the rules of evidence do not apply to "proceedings on probation or parole violations."