**STATE**

v.

**David FERRARA.**

**No. 2005–51–C.A.**

Supreme Court of Rhode Island.

Oct. 24, 2005.

Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

# OPINION

Justice ROBINSON for the Court.

The defendant, David Ferrara, appeals from the Superior Court's determination that he violated the terms and conditions of his probation by committing an attempted breaking and entering. As a result of this violation, Mr. Ferrara was sentenced to serve ten years of a previously imposed twenty-five year suspended sentence.

On appeal, the defendant contends (1) that the photo array used by the Providence police was unduly suggestive, thus denying him his constitutional right to due process of law, and (2) that the hearing justice abused his discretion by refusing to admit as full exhibits two documents discussing protocols for conducting photo arrays that are employed in certain other jurisdictions.

This case came before the Supreme Court for oral argument on October 3, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument.

## Facts and Travel

On the afternoon of April 25, 2004, Sandra Marino was watching television in the living room of her first-floor apartment at 192 Progress Ave. in Providence. At approximately 4:30, Ms. Marino heard her front doorbell ring, but she did not open the door because she did not recognize the man standing outside. She then heard her back doorbell ring; but, once again, she did not open the door because she did not recognize the man who was there. At defendant's probation-violation hearing, Ms. Marino testified that, on the same afternoon, a short time after those two incidents, she heard a noise coming from her kitchen and saw that the screen of her kitchen window was being lifted. According to Ms. Marino's testimony, she then approached within one to two feet of the window and saw the same man, whom she later identified as defendant, with his hands on the screen. Ms. Marino yelled at the man, and he ran out of her yard.

In addition to this incident, Ms. Marino testified that she had previously received at least two phone calls from a man who identified himself as David Ferrara. During these calls, Mr. Ferrara expressed his desire to meet with Ms. Marino, but she indicated her unwillingness to do so. According to Ms. Marino's testimony, defendant also left her two phone messages—in response to which she called him and asked him not to call her anymore.

On or about May 5, 2004, Ms. Marino reported what had happened on April 25 to the Providence Police Department. She provided the police with a description of the man she had seen at her window,[1] and she also provided them with defendant's name—based upon the phone calls that she had received. The next day, she identified defendant from a six-person photo array that Detective Robert Drohan had received from the Department of Corrections.[2] On the basis of this information,

1. In her statement to the police, Ms. Marino described the man who had attempted to break into her home as a light-skinned black man with dark, curly hair.

2. The hearing justice found that this photo array was not generated pursuant to the prac- tice typically employed by the Providence Police Department. According to Detective Drohan's testimony, the Providence Police Department did not have any pictures of David Ferrara that it could use in a photo array. However, upon learning that Mr. Fer-

Detective Sergeant Michael Sweeney arrested defendant on May 7, 2004.

According to Detective Sergeant Sweeney's testimony, after he advised defendant of his rights and informed him that he was a suspect in an attempted breaking and entering, defendant stated: "I didn't break into that house." Moreover, before Detective Sergeant Sweeney provided defendant with the address where the attempted breaking and entering had occurred, defendant identified with specificity both the address (192 Progress Avenue) and the person who lived there (Joey Beaver's mother).[3] Detective Sergeant Sweeney further testified that defendant admitted going to Ms. Marino's house late one afternoon and ringing the doorbell several times. The defendant also admitted that he had called Ms. Marino on several occasions and that she had asked that he stop calling her.

During his probation-violation hearing, defendant sought to introduce as full exhibits two documents explaining protocols used in certain other jurisdictions for conducting photo arrays, which protocols differ from the method employed by Detective Drohan.[4] The hearing justice found that the proffered documents were irrelevant to the ultimate issue presented at the hearing—viz., whether defendant was on good behavior on the day in question. Moreover, the hearing justice found that misidentification was not an issue in this case. In support of this finding, the hearing justice said:

"[T]he defendant, using his name, called her on at least two occasions * * *. Then the defendant presented himself at her home. She made a positive identification in a fair photo-spread, if not a perfect one. She also made an identification of this defendant, after knowing that this defendant was a friend of her son. So, there was a nexus between this defendant and Miss [Marino], which Miss Marino didn't even know about until the event in question.

"Moreover, we have the defendant's statement [that] * * * 'I didn't break into 192 Progress Avenue.'

"Now, apparently the address of the premises had not even been given to the defendant at that point of the interrogation, but he readily admitted that * * * [h]e went to 192 Progress, after he got out of prison late in the afternoon—he wanted to stay there—and he rang the front and back doors, all of that totally consistent with Miss [Marino's] testimony.

"* * *

"He likewise indicated, consistent with Miss [Marino], that there had been telephone conversations between [Miss] Marino and himself * * *."

After considering these facts, the hearing justice concluded that "the defendant, himself, has eradicated any question as to the

rara had been arrested in the past, Detective Drohan contacted the special investigations unit at the Department of Corrections; and that Department then generated the six-person photo array that was shown to Ms. Marino.

3. Joey Beaver is, in fact, Ms. Marino's son. It appears from the record that defendant knew Joey from prison and wanted to talk to Joey's mother about the possibility of staying at her apartment.

4. The two documents proffered by the defense were: (1) the "Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures" (2001) promulgated by the New Jersey Attorney General; and (2) "Eyewitness Evidence: A Training Guide for Law Enforcement" (2003) promulgated by the United States Department of Justice. These documents discuss the methods of conducting photo arrays which are preferred by these two agencies.

identification of the unwanted visitor on April the 25th, of this year."

Based upon his determination that there remained "little question that [defendant] was the one at Progress Avenue" and the testimony of Ms. Marino as to the events of April 25, 2004, which testimony he found to be credible, the hearing justice determined that defendant had in fact attempted a breaking and entering into Ms. Marino's home. Accordingly, the hearing justice concluded that the defendant had not been on good behavior and therefore had violated the terms and conditions of his probation. As a result of this finding of a probation violation, the hearing justice vacated ten years of the twenty-five year suspended sentence that had previously been imposed as part of defendant's *nolo contendere* plea to burglary, and he ordered defendant to serve those ten years.

On appeal, defendant argues (1) that his constitutional right to due process was violated by the unduly suggestive photo array employed by the Providence police and (2) that it was an abuse of discretion for the hearing justice to refuse to admit the two foreign documents regarding protocols for photo arrays as full exhibits.

### Standard of Review

■ When reviewing probation-violation rulings, we are limited to determining whether the hearing justice's decision was arbitrary or capricious. *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998). For a hearing justice to find a probation violation, there must be reasonably satisfactory evidence that the defendant failed to comply with the terms and conditions of his or her probationary status. *See State v. Znosko*, 755 A.2d 832, 834 (R.I.2000). It is well settled that the proper role of the hearing justice in a probation-violation hearing is solely to decide whether or not in the judgment of the hearing justice the defen-

dant acted in accordance with the standard of good behavior that is required as a condition of probation. *See State v. Waite*, 813 A.2d 982, 985 (R.I.2003) ("Keeping the peace and remaining on good behavior are conditions of probation."); *see also State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005) ("[T]he sole purpose of a probation-revocation proceeding is for the trial justice to determine whether these conditions have been violated."); *State v. Godette*, 751 A.2d 742, 745 (R.I.2000) (indicating that the appropriate role of the hearing justice at a probation-violation hearing is "to determine only whether in [the hearing justice's] discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by [defendant's] probationary status.").

■ In making this determination, the hearing justice is vested with the discretionary authority to assess and pass upon the credibility of the witnesses testifying at the hearing. *See Waite*, 813 A.2d at 985. As we stated in *Rioux*:

"When a probation-violation inquiry turns on a determination of credibility, * * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *Rioux*, 708 A.2d at 898.

Similarly, decisions about the relevance and admissibility of evidence are also left to the discretion of the trial court. *State v. Greene*, 726 A.2d 471, 473 (R.I.1999) (mem.). A hearing justice's decision will be reversed only upon a clear showing of abuse of discretion. *Id.* ("This Court will not reverse a determination of relevance

absent a showing that the trial justice has clearly abused his or her discretion.").

## Analysis

 The defendant in this case does not challenge the hearing justice's factual findings as to what occurred on April 25, 2004. Instead, defendant's appeal centers around the photo array shown to Ms. Marino by the Providence police on May 6, 2004. The defendant contends that the photo spread was unduly suggestive, and he also contends that the two documents excluded by the hearing justice were relevant to his attempt to demonstrate the validity of his first contention. What defendant overlooks, however, is that these arguments are irrelevant to the ultimate determination that the hearing justice was required to make in this case—namely, whether defendant's conduct on April 25, 2004 was lacking in the good behavior required by his probationary status. *See Sylvia*, 871 A.2d at 957; *Znosko*, 755 A.2d at 834. Since the facts as found by the hearing justice eliminate any concern about misidentification and leave no question that defendant was the individual who attempted to break and enter into Ms. Marino's home, it is clear that defendant was not acting in good behavior and had thus violated the terms and conditions of his probation. The photo array shown to Ms. Marino and the foreign documents discussing protocols employed by other agencies for conducting such arrays have no bearing on this determination.[5]

Given the testimony of Ms. Marino, who identified defendant as the person who attempted to break and enter into her home, as well as defendant's own statements concerning Ms. Marino's address and who she was, the hearing justice was well within his discretionary authority when he found that there was reasonably satisfactory evidence that defendant had violated the terms and conditions of his probationary status. *See Znosko*, 755 A.2d at 834. The hearing justice was also well within his discretion in finding credible Ms. Marino's testimony as to the events of April 25, 2004. *See Waite*, 813 A.2d at 985; *Rioux*, 708 A.2d at 898. Thus, we agree that the hearing justice's finding of a violation was neither arbitrary nor capricious and was well supported by the evidence. *See Rioux*, 708 A.2d at 897.

 Additionally, the decision of the hearing justice to exclude the two foreign documents provides no basis for a reversal.

---

5. Since the hearing justice found that there was no misidentification present in this case, it is not necessary for us to reach the merits of defendant's contention that the photo array employed by the Providence police was unduly suggestive. It is worth noting, however, that the hearing justice found defendant's argument on this point—that the photo array violated his constitutional right to due process because, out of the six photos shown to Ms. Marino, defendant was the only non-Caucasian—to be unconvincing. The hearing justice noted:

"I think that a better photo-spread could have been prepared. But, I certainly don't find this one unduly suggestive.

\* \* \*

"[W]hen I came into the courtroom the first time and saw the defendant in this case for the first time, quite frankly, I did not even think that he was a light-skinned Afro–American, and maybe that he is or he isn't. But I would state for the record, \* \* \* the defendant's skin color is no darker than mine or most Caucasians I know who tan up during the summer months.

"There are many ethnic groups that this defendant may be related to. And so to state that the defendant is the only black or Afro–American, or a person of color in the photo-spread is, I think, fair argument, but I think it's misleading."

Based upon these statements, it appears that even the hearing justice was not able to determine defendant's ethnicity. Accordingly, we cannot find that the photo array shown to Ms. Marino in this case was unduly suggestive.

An evidentiary issue of this type is confided to the discretion of the hearing justice, and it can be overturned only for abuse of discretion. *See Greene,* 726 A.2d at 473. In light of the fact that these two documents had no direct bearing on the ultimate issue before the court, the hearing justice clearly did not abuse his discretion in choosing to exclude them. *See id.*

### Conclusion

For these reasons, the judgment of the Superior Court is affirmed.