Arthur J. TOEGEMANN

v.

CITY OF PROVIDENCE.

No. 2010–91–Appeal.

Supreme Court of Rhode Island.

June 24, 2011.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiff, Arthur J. Toegemann, appeals *pro se* from a Superior Court entry of summary judgment in favor of the defendant, the City of Providence (the city). This negligence action arises out of the allegedly dangerous traffic conditions at an intersection in Providence, where the car that the plaintiff was driving collided with another motor vehicle on September 20, 2007. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On September 20, 2007, plaintiff was involved in a motor vehicle accident at the intersection of Adelaide Avenue and Melrose Street in the City of Providence. The plaintiff reported that he stopped at a stop sign on Melrose Street, where the speed limit was posted as twenty-five miles per hour, and that when he proceeded into the intersection his vehicle struck another vehicle. The plaintiff filed a *pro se* complaint in Superior Court against the city, alleging that the city had negligently "installed and maintained an unsafe, dangerous road at the intersection of Adelaide Avenue and Melrose [Street]," which caused plaintiff's

Arthur J. Toegemann, Pro Se, for Plaintiff.

Olajumoke Akinrolabu, Esq., for Defendant.

accident. Specifically, plaintiff contended that the posted speed limit was "too fast for the area," that the intersection was unsafe because it had only two stop signs, that the speed limit signs were hidden by vegetative growth, and that trees blocked the view of the "Road Narrows" signs. The plaintiff sought compensation for damages to his vehicle and for emotional pain and suffering, and he also sought the correction of the allegedly dangerous conditions.[1]

 The plaintiff proceeded to file several motions for discovery, which were heard and denied by a Superior Court justice (motion justice).[2] On February 27, 2009, defendant moved for summary judgment, asserting that based upon the public-duty doctrine, its decisions with respect to the traffic design of the intersection were discretionary and not actionable. On June 2, 2009, at a hearing on defendant's motion, the hearing justice found that "this case falls squarely within the public duty doctrine and that the plaintiff has not shown any genuine issue of material fact that would exempt this case from that doctrine." Accordingly, the hearing justice granted summary judgment in favor of

defendant. The plaintiff filed a notice of appeal on June 22, 2009.[3]

## II

### Standard of Review

 "It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis." *Rhode Island Insurer's Insolvency Fund v. Leviton Manufacturing Co.*, 763 A.2d 590, 594 (R.I.2000). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Poulin v. Custom Craft, Inc.*, 996 A.2d 654, 658 (R.I.2010) (quoting *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005)). "Further, a party 'opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Id.* (quoting *D'Allesandro v. Tarro*, 842 A.2d 1063, 1065 (R.I.2004)).

1. The plaintiff also filed a claim with the city seeking compensation for injuries suffered as a result of the accident. In response, the city's Traffic Engineering Division of the Department of Public Works investigated the intersection at issue on December 28, 2007, and it documented the following conclusions in a memorandum to the city solicitor's office: "All of the traffic control devices were in place. Nothing was missing or obstructed. This intersection does not warrant the installation of a 4–WAY STOP sign. The posted [s]peed [l]imit is a reasonable and prudent speed for this area." In a subsequent letter dated March 14, 2008, the city notified plaintiff that his claim had been denied.

2. On appeal, plaintiff's claims of error arise from the orders of two Superior Court jus-

tices. The first justice heard various pretrial motions and shall be referred to as the motion justice. The second justice presided over a hearing on defendant's motion for summary judgment and shall be referred to as the hearing justice.

3. Final judgment was not entered by the Superior Court until March 2, 2010. The plaintiff's premature notice of appeal is sufficient, however, as judgment was, in fact, entered thereafter. *See* Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure ("A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof"); *see also State v. Menard*, 888 A.2d 57, 59 n. 2 (R.I.2005).

## III

### Discussion

On appeal, plaintiff argues that the hearing justice wrongfully applied the public-duty doctrine in granting summary judgment, in light of what plaintiff contends are clear statutory guidelines for traffic design contained in G.L.1956 § 31–13–3. The plaintiff also avers that the motion justice erred in denying his motions for discovery.

First, plaintiff asserts a statutory right to recover damages for injuries arising out of an allegedly dangerous traffic condition perpetuated by the city; he relies on G.L.1956 § 9–31–1, which abrogates the doctrine of sovereign immunity with respect to the tortious conduct of the state or a municipality. Section 9–31–1(a) provides that a municipality, subject to certain limitations, is "liable in all actions of tort in the same manner as a private individual or corporation." It is well settled in this jurisdiction, however, that a municipality's liability under § 9–31–1 is limited by the public-duty doctrine. *See, e.g., Gagnon v. State,* 570 A.2d 656, 658–59 (R.I.1990); *Knudsen v. Hall,* 490 A.2d 976, 977–78 (R.I.1985); *Ryan v. State Department of Transportation,* 420 A.2d 841, 843 (R.I. 1980). "The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." *DeFusco v. Todesca Forte, Inc.,* 683 A.2d 363, 365 (R.I.1996) (quoting *Haley v. Town of Lincoln,* 611 A.2d 845, 849 (R.I.1992)).

The controlling statute pertaining to the city's conduct in the instant case is § 31–13–3, which states:

"The traffic authority of any city or town may place and maintain traffic control signals, signs, markings, and other safety devices upon the highways under their jurisdiction as they may deem necessary * * * provided the signals, signs, markings, and devices conform to the regulations and specifications established by the state traffic commission in accordance with this chapter."

The plaintiff argues that, under this statutory provision, the city lacks complete discretion in its placement of traffic-control devices because it is obligated to comply with guidelines established by the state traffic commission. It is plaintiff's contention that the public-duty doctrine does not apply in this case in light of "the clear statutory guideline of § 31–13–3." However, plaintiff has failed to cite any particular state mandate with which the city allegedly did not comply. At oral argument, the city asserted that the state traffic commission had not established mandates for the placement or number of stop signs required at any particular location. The city argues that the terms of § 31–13–3 are permissive, providing that the city "may place" traffic-control devices "as [it] may deem necessary," and that the activities at issue therefore are within the city's discretion.

This Court previously has found that, in the context of § 31–13–3, "the placement of traffic-control signs by a municipality is a quintessentially governmental function and a discretionary act." *Hudson v. City of Providence,* 830 A.2d 1105, 1106–07 (R.I. 2003); *see also Polaski v. O'Reilly,* 559 A.2d 646, 647 (R.I.1989) (stating that "the placing of traffic-control signals is a discretionary act for which no statutory duty or liability has been imposed"). Accordingly, we are of the opinion that the city's placement of traffic-control devices in the case at bar is precisely the type of discretionary governmental activity that is shielded from tort liability under the public-duty doctrine.

■ Although this Court has enumerated three exceptions to the public-duty doctrine, we are satisfied that none of the exceptions is triggered by the facts alleged by plaintiff. The first exception applies "when the allegedly negligent activities are normally performed by private citizens." *DeFusco,* 683 A.2d at 365. This exception is not relevant to the instant appeal because the placement and maintenance of traffic-control devices are purely governmental functions that are not normally performed by private citizens.

■ The second exception exists when the plaintiff establishes "a breach of a special duty, owed to the plaintiff as a specific, identifiable individual and not merely a breach of some obligation owed [to] the general public." *Hudson,* 830 A.2d at 1107; *see also DeFusco,* 683 A.2d at 365. In this case, the duty identified by plaintiff is a duty owed only to the motoring public in general. *See DeFusco,* 683 A.2d at 364–65 (finding that the state's duty to properly maintain public roadways was a duty "owed only to the general highway-traveling public"); *Polaski,* 559 A.2d at 646–47 (finding that under § 31–13–3 a municipality did not owe a special duty to the plaintiff who was injured in a motor vehicle accident as a result of a poorly maintained traffic-control sign). The second exception, therefore, also does not apply to this appeal because plaintiff has not alleged a breach of a special duty owed to him in his individual capacity.

■ The third exception arises when the state engages in "egregious conduct." *DeFusco,* 683 A.2d at 365. "That exception provides that when 'the state has knowledge that it has created a circumstance that forces an individual into a position of peril and subsequently chooses not to remedy the situation,' the state can then be held liable for its negligence." *Id.* (quoting *Boland v. Town of Tiverton,* 670 A.2d 1245, 1248 (R.I.1996)). Here, plaintiff has presented no evidence to support a finding that the city was aware, or should have been aware, of any prior accidents at the intersection in question. In the absence of any evidence that would indicate that the city's alleged negligence amounted to egregious conduct, there is no basis for applying this exception.

We conclude that plaintiff has failed to raise a genuine issue of material fact sufficient to constitute an exception to the public-duty doctrine. Accordingly, because the issues in this case are controlled by the public-duty doctrine, there is no basis for municipal liability and the hearing justice's grant of summary judgment was proper.

■ Finally, the plaintiff also contends on appeal that the motion justice erred in denying his motions for discovery. Our review of the record reveals that no transcripts of any of the proceedings below on the plaintiff's motions for discovery have been provided by the plaintiff to this Court. It is well established that "[a] party seeking to have this [C]ourt review alleged error has the burden of furnishing us with so much of the record as may be required to enable this [C]ourt to pass on the error alleged." *Kalooski v. Albert–Frankenthal AG,* 770 A.2d 831, 833 (R.I. 2001) (quoting *May v. Penn T.V. & Furniture Co.,* 686 A.2d 95, 98 (R.I.1996)). "If the appealing party fails to provide us with a sufficient transcript, we cannot perform a meaningful review" of the factors that prompted the denial of the motions at issue. *Id.* (quoting *May,* 686 A.2d at 98); *see also Bourdon's, Inc. v. Ecin Industries, Inc.,* 704 A.2d 747, 758–59 (R.I.1997). "In such circumstances, we have 'no choice but to uphold the [motion] justice's findings.'" *Bourdon's, Inc.,* 704 A.2d at 759 (quoting *In re Kimberly and James,* 583 A.2d 877, 879 (R.I.1990)). Therefore, the

plaintiff's appeal on this issue also must fail.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.