### STATE

v.

### George BOUFFARD.

### No. 2007–143–CA.

Supreme Court of Rhode Island.

April 14, 2008.

---

Aaron Weismann, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, George Bouffard, appeals to this Court from an adjudication of probation violation. On appeal the defendant contends: (1) that the magistrate who presided over the adjudication did not have the authority to do so and (2) that there was insufficient evidence to support a finding that he violated the terms and conditions of his probation.

This case came before the Supreme Court for oral argument on March 11, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

When the events at issue in this case occurred, defendant was on probation in connection with two separate incidents that had resulted in his being charged with breaking and entering in violation of G.L. 1956 § 11–8–2.[1] On September 12, 1997,

---

1. The relevant provision of G.L.1956 § 11–8–2 provides:

    "(a) Every person who shall break and enter at any time of the day or night any dwelling house or apartment, whether the dwelling house or apartment is occupied or not, or any outbuilding or garage attached to or adjoining any dwelling house, without

defendant, having pled *nolo contendere* to unlawfully breaking and entering a dwelling located in Johnston, was sentenced to ten years imprisonment; he was ordered to serve three years of that sentence with the balance suspended for a seven-year probationary period. Four years later, on October 9, 2001, defendant, having again pled *nolo contendere* to breaking and entering a dwelling (this time in Smithfield), was sentenced to fifteen years imprisonment, with six years to serve and the balance suspended with probation.

On July 4, 2006, defendant was arrested on charges of having broken into and entered a dwelling. In view of that allegation, the state filed a Super. R.Crim. P. 32(f)[2] notice of violation on July 5, 2006, contending that defendant had violated the terms and conditions of his probation. A probation violation hearing was held on December 12 and 13 of 2006, over which a magistrate of the Superior Court presided.

Several witnesses testified for the state as to the events that took place on Saturday, July 1, 2006, which events formed the basis for the charge of breaking and entering on the part of defendant and the subsequent filing of the Rule 32(f) notice.

Beverly J. Celeberto, defendant's former mother-in-law, testified that on July 1, 2006 she and her daughter Cecelia Bouffard (defendant's former wife) had made plans to go to a Fourth of July party at the home of Lori Bouffard (defendant's sister-in-law).[3] Ms. Celeberto testified that Lori's[4] home was located on Bracken Street in Cranston.

Ms. Celeberto testified that they arrived at the party at approximately 6 p.m.; she said that, immediately upon their arrival, they saw that defendant was also in attendance. According to Ms. Celeberto's testimony, she told Cecelia, "We can't stay here." She added that her daughter agreed with her and they left the party and returned to their home, which was located about three blocks away at 123 Lawrence Street. Ms. Celeberto testified that they stayed at their home until Lori called at approximately 7:30 p.m. and informed them that defendant had left the party; at that point Ms. Celeberto and Cecelia returned to the party on Bracken Street. Ms. Celeberto testified that she stayed at the party for only a few minutes "because there was too many people there, [and she] couldn't take it." She advised her daughter that she was leaving, and she then proceeded to walk back to her home. It was further her testimony that, as she approached her house, she noticed a light blue car in the driveway and that she then

the consent of the owner or tenant of the dwelling house, apartment, building, or garage, shall be imprisoned for not less than two (2) years and not more than ten (10) years for the first conviction, and for the second and subsequent conviction shall be imprisoned for not less than four (4) years and not more than fifteen (15) years * * *."

2. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:

"The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

3. Although the party about which various witnesses testified actually took place on July 1, it was referred to as a Fourth of July party.

4. For the sake of clarity, we shall refer from time to time in the Facts and Travel section of this opinion to the three women who share the last name of Bouffard by their first names. We intend no disrespect.

saw defendant coming out of the garage.[5] After seeing defendant, Ms. Celeberto testified that she was "scared" and that she therefore returned to the party in order to bring her daughter back to their home. It was further her testimony that, once she arrived back at the party, she told Cecelia, "You better take me home;" she advised Cecelia that she had seen defendant "coming out of our yard." Ms. Celeberto testified that, when the two women returned to their home, they observed that the house had been broken into, that a window screen was broken, and that money which had been kept in Ms. Celeberto's bedroom had been stolen.

Justine Bouffard, the daughter of defendant and Cecelia Bouffard, testified that on July 1, 2006 she was residing at 123 Lawrence Street along with her boyfriend, her mother, her grandmother (Ms. Celeberto), her brother (Matthew Celeberto), and his girlfriend (Cheryl Conlon). Justine testified that she initially saw defendant at the Bracken Street Fourth of July party at some point between 4 p.m. and 5 p.m. It was her testimony that, some time later, defendant left the party in a "blue car with shiny hubcaps." She further testified that she observed defendant return to the party at approximately 8 p.m. and that she saw that he was wearing "a white shirt with jeans" and that he had "blood on the side of his shirt." Justine testified that defendant stayed only a short time at the party and then left again in a blue car. Shortly thereafter, she received a phone call from her mother and grandmother; based on the substance of that call, she returned to her Lawrence Street home. She testified that, once she returned home, she saw that her brother's room had been ransacked and that approximately ten pieces of jewelry were missing from her room. She further testified that some of her mother's jewelry was missing as well.

Cecelia Bouffard, defendant's former wife, testified that she also attended the Fourth of July party on July 1, 2006 at the Bracken Street home of her former sister-in-law. She testified that, when she and her mother (Ms. Celeberto) arrived at the party at approximately 5:30 p.m., they saw defendant standing outside the house talking to his brother; Cecelia added that she told the hostess, Lori Bouffard, that she was "not going in there with [defendant] there" and that she and her mother then returned to their home. It was further her testimony that, at approximately 6:15 p.m., they received a telephone call from Lori informing them that defendant had left and that they should return to the party. Cecelia testified that, on the way back to the party, she saw defendant sitting in a blue car that was parked on a nearby street. According to Cecelia's testimony, she and her mother returned to Lori's house at around 6:30 p.m., but about an hour later her mother wanted to go home and informed Cecelia that she was leaving the party. It was further her testimony that, at approximately 8 p.m., her mother came back to the party and that the two of them then left together to return to their Lawrence Street home. Cecelia testified that, as she entered the house, she "noticed [that] everything was all over" in her son's room, that drawers were pulled out in her daughter's room, and that the window in her bedroom was open and drawers had been pulled out. According to Cecelia's testimony, the screen on her window "was ripped" and the lock was broken.

---

**5.** Ms. Celeberto testified that the garage had been converted into a bedroom for her grandson, Matthew Celeberto.

Matthew Celeberto, defendant's stepson and the owner of the Lawrence Street house, testified that, after returning from the party, he came to the conclusion that the house had been broken into because "[a]ll the stuff in my bedroom was on the floor and whatnot, drawers were open and stuff." He further testified that numerous items had been taken from his bedroom, including money, a watch, earrings, and a .38–calibre Smith & Wesson handgun.

The state's final witness, Matthew Celeberto's girlfriend, Cheryl Conlon, testified that, at around 4:30 or 5 p.m., while in attendance at the Fourth of July party, she was introduced to defendant by his daughter Justine. Later that evening, at "probably around like 7:30ish, quarter past seven," she again saw defendant at the party and noted that there was what appeared to be blood on the left side of his shirt. Ms. Conlon testified that she stayed at the party until her boyfriend received a phone call from his mother and grandmother, at which point the couple returned to the Lawrence Street house; she said that, when they arrived there, she observed that the "whole downstairs was ransacked" and her "whole jewelry box was gone."

After the prosecution rested, defendant presented his witnesses. His first witness, one Albert Arlan, testified that he had noticed defendant as being present at the Mount Carmel Club (also located in Cranston) from about 7 p.m. until 8:45 p.m. on the evening of July 1, 2006. Mr. Arlan further testified that, while he did not have any interaction with defendant on that evening, he did see him at the club with his head down on a table.

Finally, an investigator with the public defender's office, John Nardolilo, Jr., testified that he conducted an investigation on defendant's behalf to determine the distances between the site of the party on Bracken Street and the site of the break-in on Lawrence Street. Mr. Nardolilo testified that the distance between the two locations is 0.38 miles and that the distance between 123 Lawrence Street and the Mount Carmel Club is 0.92 miles.

After both parties had rested, defense counsel argued that there was inconsistency in the testimony of the state's various witnesses; he contended that those witnesses had established a timeline that was confusing and conflicting. Defense counsel further argued that the only person who testified to having actually seen defendant at the site of the break-in was Ms. Celeberto, whose testimony he characterized as questionable, confusing and contradictory.

The state maintained that the evidence presented at the hearing constituted proof of a probation violation. With respect to Ms. Celeberto's testimony, the state contended that, while she "is excitable and was confused as to time, she was adamant as to what she saw * * *." The state further argued that "all of [Ms. Celeberto's] actions are corroborated * * *." The state also argued that Mr. Arlan's testimony was completely inconsistent and not credible.

After reviewing the testimony elicited at the probation violation hearing, the magistrate found Ms. Celeberto to be credible. The magistrate noted that the testimony of Justine Bouffard and of her mother, Cecelia Bouffard, was consistent as to the events that occurred on July 1, 2006. With respect to the reliability of Mr. Arlan, who had testified for the defense, the magistrate noted that his testimony that defendant's head was on a table "raises a question as to whether or not he was—how he was able to recognize [defendant], because he indicated he never spoke to him." The magistrate then made the following assessment:

"While the several witnesses who I have summarized their testimony have variations in the time of events that evening, their testimony both individually and collectively was credible at least as it pertained to [defendant] * * *. There is no question in the [c]ourt's mind that [defendant] was present at the party at Lori Bouffard's house. There is no question that not only was he there, but there is no question but that he left and that he returned. The fact that he was at the party at Lori Bouffard's house certainly does not make him a prime suspect regarding the break-in at 123 Lawrence Street; because that would call for some speculation on the part of the [c]ourt. Likewise, the only witness that could even place [defendant] at the scene of the break-in is Beverly Celeberto. When one takes her testimony and buttresses it with the testimony of the other witnesses, the [c]ourt would find that a strong circumstantial case has been established."

The magistrate then made the following further determination:

"[O]ne could draw a reasonable inference that [defendant] being in the neighborhood and being seen outside 123 Lawrence Street * * * one could draw a reasonable inference that [defendant], who had no reason nor right to be on that property, was there for some other reason."

The magistrate then concluded that defendant's conduct on July 1, 2006 had failed to "meet the standard of keeping the peace and being of good behavior;" accordingly, the magistrate ruled that he was reasonably satisfied that defendant had violated the terms of his probation. The magistrate then sentenced defendant to serve the full seven years remaining on his suspended sentence for the 1997 breaking and entering case, and he continued defen-

dant on the same sentence originally imposed in the 2001 breaking and entering case. A judgment entered on January 8, 2007, and defendant filed his notice of appeal on January 16, 2007.

On appeal, defendant contends: (1) that the magistrate did not have authority to preside over his probation violation hearing and (2) that the evidence was insufficient to find a probation violation.

## Standard of Review

At a probation violation hearing, the sole issue for the presiding judicial officer to consider is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior. *State v. Crudup*, 842 A.2d 1069, 1072 (R.I.2004); *see also State v. Forbes*, 925 A.2d 929, 934 (R.I.2007). The burden of proof on the state is much lower than that which exists in a criminal trial—the state need only show that "reasonably satisfactory" evidence supports a finding that the defendant has violated his or her probation. *See Forbes*, 925 A.2d at 934; *see also State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005).

In determining whether or not a defendant has committed such a violation, the presiding judicial officer is charged with weighing the evidence and assessing the credibility of the witnesses. *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.); *see also Forbes*, 925 A.2d at 934. With respect to that assessment, this Court has previously stated that "[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court." *Sylvia*, 871 A.2d at 957 (internal quotation marks omitted); *State v. Waite*, 813 A.2d 982, 985 (R.I. 2003). Moreover, as we have previously elucidated:

"When a probation-violation inquiry turns on a determination of credibility

* * * and the hearing justice, after considering all the evidence, accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred." *State v. Rioux,* 708 A.2d 895, 898 (R.I.1998); *see also Sylvia,* 871 A.2d at 957.

■ When this Court reviews a finding of a probation violation, we consider only whether the presiding judicial officer acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation. *See State v. McLaughlin,* 935 A.2d 938, 941 (R.I.2007); *see also Forbes,* 925 A.2d at 934.

### Analysis
### I
### The Authority of the Magistrate

■ The defendant contends on appeal that the adjudication of his probation violation should be vacated because the magistrate was without "authority to preside over his violation hearing." The defendant also argues that "the delegation of authority to magistrates with respect to violation hearings * * * cannot withstand constitutional scrutiny."

There is no need for us to dwell on this argument, however, because it is utterly clear from the record that defendant failed

to raise at his probation violation hearing his constitutionally phrased contention concerning the magistrate's authority to adjudicate his case, which contention he now endeavors to raise for the first time on appeal. As we have stated on numerous occasions, our "raise or waive" rule precludes us from considering on appeal contentions that have not been properly presented before the trial court. *See State v. Bido,* 941 A.2d 822, 828–29 (R.I.2008) ("It is well settled that a litigant cannot raise * * * a new theory on appeal if it was not raised before the trial court."); *see also Ryan v. Roman Catholic Bishop of Providence,* 941 A.2d 174, 184–85 (R.I. 2008); *State v. Briggs,* 934 A.2d 811, 815 (R.I.2007); *State v. Bettencourt,* 723 A.2d 1101, 1107–08 (R.I.1999).

It is undisputed that the magistrate was statutorily authorized to preside over the probation revocation hearing.[6] What defendant has belatedly sought to challenge is the constitutionality of that statutory authorization. However, pursuant to our raise or waive rule, defendant has lost the opportunity to pursue that challenge in this Court since he did not bring it to the attention of the court below.[7]

With respect to certain legal arguments that involve basic constitutional rights, this Court has recognized a narrow exception to the raise or waive rule. *See Bido,* 941 A.2d at 829; *Pollard v. Acer Group,* 870 A.2d 429, 432 n. 10 (R.I.2005); *State v.*

---

6. Pursuant to G.L.1956 § 8–2–39(c) a magistrate is "empowered to hear all * * * *probation revocation hearings,* and to review all such matters * * * and to modify the terms and conditions of probation * * *." (Emphasis added.) Section 8–2–39(c) further provides that a magistrate "shall have the power to take testimony in connection with all matters set forth herein."

7. We were confronted with an analogous situation in the case of *Pollard v. Acer Group,* 870

A.2d 429 (R.I.2005). In the course of deciding that case we wrote as follows:

"The plaintiff's brief on appeal extensively argues that the tax sale scheme underlying the petition to foreclose her rights of redemption is unconstitutional. Unfortunately for plaintiff, however, she utterly failed to articulate such an argument in the Superior Court. Accordingly, pursuant to one of our most well-established principles (the raise or waive rule), that argument will not be considered by us." *Id.* at 432.

*Breen,* 767 A.2d 50, 57 (R.I.2001); *State v. Burke,* 522 A.2d 725, 731 (R.I.1987). For that exception to apply, however, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *Breen,* 767 A.2d at 57. The instant defendant may not avail himself of this narrow exception because the constitutional arguments that he seeks to present for the first time on appeal are far from novel. *See, e.g., In re David G.,* 741 A.2d 863, 866 (R.I.1999). The mere fact that the statutory scheme with respect to the grant of judicial authority to magistrates has not been previously challenged on constitutional grounds does not render the issue novel for purposes of the exception. *See Pollard,* 870 A.2d at 432 n. 10 (rejecting plaintiff's contention that the exception should apply with respect to a belated constitutional challenge to the tax sale statute); *Cronan ex rel. State v. Cronan,* 774 A.2d 866, 878 (R.I.2001) (declining to apply the exception with respect to a belated constitutional challenge to private prosecutions); *In re David G.,* 741 A.2d at 866 (refusing to apply the exception to a belated constitutional challenge to the sex-offender registration statute).

Finally, even if we were to apply our exception to the raise or waive rule in this case, it is of significance that defendant failed to comply with the provisions of G.L.1956 § 9–30–11.[8] That statute requires that a litigant serve the Attorney General "with a copy of the proceeding" if he or she intends to challenge the constitutionality of a statute. § 9–30–11. As this Court has indicated on more than one occasion, § 9–30–11 "must be followed and construed strictly." *Brown v. Samiagio,* 521 A.2d 119, 121 (R.I.1987); *see also Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 853 (R.I.2001). This Court has frequently declared that "no challenge to the constitutionality of a state statute or municipal ordinance may be validly presented unless the Attorney General is 'served with a copy of the proceeding.'" *Flanagan v. Wesselhoeft,* 765 A.2d 1203, 1211 (R.I.2001) (quoting § 9–30–11); *see also Granoff Realty II Ltd. Partnership v. Rossi,* 833 A.2d 354, 359 (R.I.2003); *Global Waste Recycling, Inc. v. Mallette,* 762 A.2d 1208, 1214 (R.I.2000) ("We do not believe that this Court should undertake to determine the constitutionality of a state statute in a given case without first affording the Attorney General the opportunity to intervene and be heard."). Accordingly, in addition to not having raised the issue in the Superior Court, defendant, by failing to provide the statutorily required service upon the Attorney General, has not properly preserved his constitutional contentions for review by this Court.

For the foregoing reasons, we decline to consider defendant's constitutional challenge to the magistrate's statutory authori-

---

8. General Laws 1956 § 9–30–11 provides in pertinent part:

"In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

We observe that Rule 24(d) of the Superior Court Rules of Civil Procedure also mandates that a "party asserting the unconstitutionality of [an act of the legislature] shall serve the attorney general with a copy of the proceeding within such time to afford the attorney general an opportunity to intervene." *See also* Article I, Rule 32 of the Supreme Court Rules of Appellate Procedure.

ty to preside over probation violation hearings.

## II

### Sufficiency of the Evidence

■ The defendant also contends that the evidence was insufficient to sustain the magistrate's findings because, in his view, the "record contains too many inconsistencies and too many holes to reasonably satisfy a fact-finder" that he violated his probation. We disagree.

■ After reviewing the entire record, we conclude that the magistrate acted neither arbitrarily nor capriciously when he determined that defendant violated the terms and conditions of his probation. As this Court has stated on numerous occasions, the state does not have to prove beyond a reasonable doubt that an alleged probation violator committed a crime; the presiding judicial officer need only be "reasonably satisfied" that a defendant breached a condition of probation by failing to keep the peace or remain on good behavior. *See, e.g., State v. Seamans,* 935 A.2d 618, 623 (R.I.2007). The focus of a probation violation hearing is not on the defendant's guilt or innocence with respect to the most recent crime with which he has been charged; rather, the focus is on whether or not the defendant's "conduct on the day in question had been lacking in the * * * good behavior expected and required by his probationary status." *State v. Brown,* 915 A.2d 1279, 1282 (R.I.2007) (internal quotation marks omitted).

In the instant case, the magistrate who conducted defendant's probation violation hearing reviewed and discussed the testimony of the several witnesses; he weighed the evidence and assessed the credibility of each of the witnesses, as is required. *See Forbes,* 925 A.2d at 934. In his assessment of that evidence, the magistrate concluded that, while some of the testimony of the state's witnesses varied to some extent as to the time when events occurred, most of the testimony of those witnesses was credible. As to the credibility of the defendant's witness, Mr. Arlan, the magistrate found:

"While the [c]ourt is aware of the fact that mere numbers of witnesses certainly do not either enhance or degrade any of the testimony, the important thing is what the witnesses have to say. If the [c]ourt were to believe Mr. Arlan, the [c]ourt would have to disbelieve all other witnesses and in fact draw a conclusion that [defendant] was no place but at the Mount Carmel Club during the evening in question. Very frankly, had Mr. Arlan indicated that he was there for a portion of the time, it certainly would have lent some credibility and raised some question as to [defendant's] whereabouts on the evening in question. Furthermore, if [defendant's] head was on the table, it raises a question as to * * * how [Mr. Arlan] was able to recognize [defendant], because he indicated he never spoke to him."

We conclude that the magistrate in this case did not err in determining that the behavior of the defendant amounted to a failure to abide by the terms of his probation, and we therefore uphold his decision.

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.