STATE

v.

Joseph D. MALONEY.

No. 2006–82–C.A.

Supreme Court of Rhode Island.

May 23, 2008.

Jane McSoley, Providence, for Plaintiff.

Edward Romano, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This is an appeal by Joseph D. Maloney from an adjudication of probation violation. In his appeal, the defendant argues: (1) that the prosecution's decision to present evidence about two different acts of alleged wrongdoing in two separate probation violation hearings (rather than in one combined probation violation hearing) was the product of prosecutorial vindictiveness; and (2) that the hearing justice erred when she determined, at the conclusion of the second probation violation proceeding, that the defendant had violated the terms and conditions of his probation.

This case came before the Supreme Court for oral argument on March 31, 2008. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

In the following paragraphs, we describe the factual events and the procedural developments that are pertinent to the legal issues implicated by this case. The factual and procedural issues are complex, while the questions of law are rather straightforward.

### A. The 1991 Plea Concerning Several Felonies

In 1988, defendant was arrested in connection with a murder at his apartment building. On May 2, 1991, defendant entered a plea of *nolo contendere* to charges of: (1) second-degree murder; (2) burglary; and (3) possession of a sawed-off shotgun. For these crimes he received a sentence of fifty years, with twenty years to serve and thirty years suspended, with

probation. The defendant was released on parole on June 23, 1999.

## B. The First Super. R.Crim. P. 32(f) Notice of Violation and the Disposition Thereof

On May 31, 2002, defendant was arrested and charged with simple assault and felony assault on one Lloyd Pettis. The simple assault charge was based on the allegation that defendant had chased after Mr. Pettis, who allegedly had been driving recklessly in the neighborhood, and had punched Mr. Pettis in the face after he swore at defendant. The felony assault charge was based on an accusation by Mr. Pettis that defendant had threatened him with a machete.

In view of what allegedly had transpired on May 31, the state filed a notice of violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure[1] on June 3, 2002, and defendant was held without bail pending a probation violation hearing. A hearing was subsequently held on October 15, 2002 at the conclusion of which the hearing justice ruled that defendant had violated his probation.[2] Thereafter, on November 6, 2002, in view of that finding, defendant was ordered to serve six years of the underlying sentence.

## C. The Second Rule 32(f) Notice of Violation

On November 27, 2002, the state filed a second Rule 32(f) notice of violation with respect to defendant. This second notice of violation stemmed from an investigation into an alleged "murder for hire" scheme which defendant purportedly had planned. (The details of that investigation are discussed in the next section of this opinion.)

## D. The Events Leading up to the Second Rule 32(f) Notice of Violation[3]

It will be recalled that defendant was imprisoned in 1991 as a consequence of having pled *nolo contendere* to several felony charges. Upon his release from prison several years later, in 1999, defendant learned that his former business associate (one Daniel Leonard) had, in the words of the hearing justice when she summarized the testimony at the second Rule 32(f) hearing, "taken advantage of [defendant's] incarceration and had taken over defendant's business without compensating defendant for his interest in the business."[4]

The defendant discussed his feelings about Mr. Leonard with one Richard Usenia, a man whom the hearing justice described as a "career criminal" and who

1. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:
 "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

2. The justice of the Superior Court who presided over defendant's first probation violation hearing did not find Mr. Pettis credible as to his allegation that defendant had threat-

ened him with a machete. She stated: "Mr. Pettis' testimony about the machete does not have a ring of truth about it." Accordingly, defendant was found to be a violator only with respect to the simple assault charge.

3. The factual narrative concerning the background of the second Rule 32(f) notice of violation is derived from the testimony of witnesses at the violation hearing that was conducted in 2004.

4. The hearing justice also observed that defendant was "angry with Leonard" because of those actions, and she further commented that defendant felt that Mr. Leonard "had cheated him."

happened to be a confidential police informant. Mr. Maloney and Mr. Usenia had first met in prison. After both men had been released on probation, defendant encountered Mr. Usenia at a medical facility that provides urine screen tests for certain parolees. In addition, defendant also attended meetings at Narcotics Anonymous with Mr. Usenia, and they also spoke with each other several times on the telephone.

Despite their friendship, defendant was unaware that Mr. Usenia served as a confidential police informant. In 2001, Mr. Usenia contacted the Warwick Police Department and relayed what defendant had previously said concerning his former business partner, Mr. Leonard. The receipt of that information prompted the Warwick Police Department to undertake an investigation into the possibility that there might be an attempt on the life of Mr. Leonard. Based on this information, and with the assistance of Mr. Usenia, an undercover operation was initiated, in which Detective Albert Faella, an undercover agent who was actually an officer in another Rhode Island police department, posed as a hit man prepared to be hired by defendant. In due course, the undercover agent met with defendant to discuss his desire to have Mr. Leonard killed.

The defendant and Detective Faella met twice in November of 2001. During those meetings, two possible attacks on Mr. Leonard were discussed: (1) assaulting and beating Mr. Leonard as a way of delivering a message; or (2) killing him and disposing of his body in the woods. At one point the two men also drove to Mr. Leonard's place of business, where defendant pointed out the security cameras at that site and offered personal details about Mr. Leonard.

The defendant and Detective Faella never made plans with respect to harming Mr. Leonard that were sufficiently specific for the police to conclude that they would be justified in arresting defendant; defendant would later state in his testimony at the second violation hearing that he did not believe Detective Faella and that he suspected that the would-be "hit man" might have been part of a trap set up by Mr. Leonard. In February of 2002, Mr. Usenia was arrested and therefore was no longer available for use in the undercover operation. It appears that the Warwick Police Department's investigation into the alleged murder for hire scheme became dormant after the second meeting between defendant and Detective Faella in November of 2001.

### E. Why There Were Two Separate Rule 32(f) Proceedings

As the proceedings relative to the first Rule 32(f) notice of violation (which dealt with the alleged assault on Mr. Pettis) were drawing to a close, the prosecutor became aware of the investigation into the alleged murder for hire scheme in which defendant allegedly played a role. Upon becoming aware of information concerning the alleged murder for hire scheme, the prosecutor sought to introduce evidence concerning the investigation into those proceedings. At the sentencing of defendant on the first probation violation, the prosecutor stated:

> "[T]he last time this matter was set down for sentencing, I indicated to the Court and [defense counsel] that, subsequent to the conclusion of the violation hearing, the State received additional information concerning Mr. Maloney, which I felt was extremely relevant and probative to the issue of sentencing. * * * This additional information the State came into after, as I said, the hearing concluded * * *."

The prosecutor stated that the alleged murder for hire scheme had occurred six

months before the assault incident. However, she further explained that, because the murder for hire investigation was still in an information-gathering stage, the prosecutor herself had not been aware of it. The hearing justice responded:

> "[I]n the event that this particular allegation has weight, I cannot fathom how it is not going to result in a new [Rule] 32(f), at the very least, and a new charge, as well; right?"

The prosecutor replied, however, that the murder for hire investigation would not necessarily evolve into a new probation violation proceeding. She stated:

> "The decision, as to whether or not a new [Rule] 32(f) [would be filed], hadn't really been made, and I think the thought was to wait and see what happened with this [the first probation violation proceeding]."

The hearing justice declared that the state would have to go forward in that regard in a separate violation proceeding. She stated:

> "There is sufficient evidence, and there's a whole package of information here that this man was, indeed, involved in such activity. It would seem to me that, even if there wasn't going to be a new criminal charge filed, certainly a [Rule] 32(f) could be filed. * * * [I]f this particular investigation has any merit, whatsoever, that you think a Judge could be reasonably satisfied it occurred, [then] the remedy is a [Rule] 32(f) * * *."

The hearing justice stated that she would give defendant a choice between: (1) proceeding with the sentencing with respect to the simple assault probation violation alone; and (2) continuing the sentencing while defendant would be held without bail and allowing the state to complete its investigation on the murder for hire allegations. Defense counsel stated that defendant chose the first option.

## F. The Hearing on the Second Rule 32(f) Notice of Violation

Subsequently, on November 27, 2002, the state filed a second Rule 32(f) notice of probation violation—this time referring to the alleged murder for hire plot. In response, defendant filed two motions: the first motion called for the hearing justice (who had presided over defendant's first probation violation hearing) to recuse herself; the second motion was a motion to dismiss on the basis of alleged prosecutorial vindictiveness and double jeopardy grounds. After considering both motions and conducting hearings concerning same, the hearing justice denied both.

### 1. The Recusal Motion[5]

At the October 1, 2003 hearing on defendant's motion to recuse, defendant argued that, because the hearing justice had found his testimony lacking in credibility during the first Rule 32(f) hearing, she would be unable to separate her earlier impressions of his credibility from his credibility in the second probation violation proceeding. The hearing justice stated that she was not predisposed to find defendant lacking in credibility; she also stated that she had in fact found defendant credible in one aspect of the prior proceeding when she determined that he had not threatened Mr. Pettis with a machete. The hearing justice, stating that she would view defendant as having a clean slate in terms of credibility, determined that she could be fair and

---

**5.** Although defendant has not appealed from the hearing justice's ruling with respect to his motion to recuse, we nonetheless summarize the basis for that motion and the hearing justice's reaction thereto. We note that the hearing justice did address that motion and carefully explained her decision not to recuse herself.

impartial in her assessment of the evidence at the second probation violation proceeding, and she denied his motion to recuse.

### 2. The Allegation of Prosecutorial Vindictiveness

On the next day, October 2, 2003, the hearing justice conducted a hearing on defendant's motion to dismiss for prosecutorial vindictiveness. The defendant argued that the state was pursuing the second probation violation as retribution for defendant's having obtained a relatively favorable outcome with respect to his first probation violation proceeding (the Pettis matter).[6] In support of this contention, defendant pointed to the fact that, at the sentencing hearing for the first probation violation, the prosecutor stated that there had not been a final decision as to whether or not the state would proceed with a violation proceeding on the murder for hire allegations because "the thought was to wait and see what happened" with the first probation violation proceeding.

The state, for its part, maintained that the quoted comment meant only that, if defendant was found not to be in violation of probation in the Pettis matter, an investigation into the murder for hire allegations could resume after he was released. If, however, he were to be imprisoned for having violated probation because of the Pettis assault, then the investigation would have to halt due to his incarceration. The prosecutor insisted that she was unaware of the murder for hire investigation while she was engaged in plea bargaining with respect to the first violation charge, i.e., the assault on Mr. Pettis.

The hearing justice issued a decision on October 28, 2003 with respect to defendant's motion to dismiss. She ruled that

there was no evidence that the state intentionally withheld the fact of the murder for hire investigation or that it later proceeded on that basis out of vindictiveness. She ruled that the state was not precluded from pursuing violation proceedings on the murder for hire allegations, and she therefore denied defendant's motion to dismiss.

### 3. The Second Probation Violation Hearing

Eleven days of probation violation proceedings commenced on March 26, 2004. The hearing justice issued a bench decision on July 26, 2004. In it, she ruled that she was reasonably satisfied that defendant had violated his probation when he made plans with an undercover agent to kill Mr. Leonard. The hearing justice ruled that defendant should serve ten years of his suspended sentence and that that ten-year term was to run consecutively to the six-year term imposed in connection with the earlier probation violation. The defendant timely appealed.

### Standard of Review

 The duty of a judicial officer presiding at a probation violation hearing is to determine whether a defendant failed to keep the peace and remain on good behavior—those being conditions of probation. *State v. McCarthy*, 945 A.2d 318, 326 (R.I. 2008). The burden of proof that the state must bear in such a proceeding is simply that of demonstrating that "reasonably satisfactory" evidence supports the finding that a defendant has violated probation. *State v. Forbes*, 925 A.2d 929, 934 (R.I. 2007); *see also State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005).

██ Determinations regarding witness credibility and the weight of the evidence

6. It will be recalled that defendant was *not* found to be a violator with respect to the

felony assault charge (involving an alleged threat with a machete). *See* note 2, *supra*.

are duties that fall within the domain of the fact-finder, who is in an ideal position to make such observations. *State v. Texter*, 896 A.2d 40, 43–44 (R.I.2006).

█ In reviewing a finding of a probation violation, this Court considers "whether the hearing justice acted arbitrarily or capriciously in finding a violation" and whether the hearing justice acted arbitrarily or capriciously in assessing witness credibility. *State v. McLaughlin*, 935 A.2d 938, 941–42 (R.I.2007) (internal quotation marks omitted); *State v. Bourdeau*, 448 A.2d 1247, 1249 (R.I.1982); *see also Forbes*, 925 A.2d at 934.

## Analysis

On appeal, defendant contends that the state's filing of the second Rule 32(f) notice of probation violation constituted prosecutorial vindictiveness and that the hearing justice erred in failing to dismiss the case. The defendant further argues that the hearing justice erred in finding that he had violated the terms and conditions of his probation. He argues in his brief to this Court that "the evidentiary underpinnings for this case bordered almost on the absurd;" he further argues that, not only were he and Mr. Usenia not close, but that he actually "thought Usenia was trying to swindle him." The defendant contends that he never intended to have Mr. Leonard killed and that his conversations with the undercover agent make that point clear. The defendant asserts that Mr. Usenia purposely rekindled his anger toward Mr. Leonard and that he was entrapped.

### A. The Allegation of Prosecutorial Vindictiveness

█ The defendant's contentions with respect to his allegation of prosecutorial vindictiveness can best be summarized by quoting the following sentences from his brief to this Court:

"[I]t is crystal clear that the prosecution had all of the facts it needed before or at the time of the first violation of probation hearing * * *. When they did not get the desired result from the hearing and had to settle for a mere [simple] assault charge, it is obvious that they utilized the instant 'offense' as the 'backup' for this prosecutorial quest against Mr. Maloney."

█ A defendant can prove prosecutorial vindictiveness by making an evidentiary showing of actual vindictiveness constituting a due process violation; in the alternative, a defendant may present evidence establishing that the circumstances of the case "warrant a presumption of vindictiveness." *State v. Tilson*. 794 A.2d 465, 467 (R.I.2002) (internal quotation marks omitted).

█ The "exceedingly difficult" showing of actual vindictiveness requires that a defendant provide "objective evidence" that a prosecutor's actions were calculated "to punish a defendant for asserting his legal rights." *Tilson*, 794 A.2d at 467 (internal quotation marks omitted).

█ By contrast, the presumption of vindictiveness comes into play when a defendant presents sufficient circumstantial evidence to enable the hearing justice to rule that there is a basis for that presumption. *Tilson*, 794 A.2d at 467. At that point, the burden shifts to the prosecutor to rebut the presumption by showing that objective reasons motivated the prosecution of the defendant. *Id.*

In the instant case, defendant asserts that the conduct of the prosecutor falls within the parameters of both the concept of actual vindictiveness and the concept of presumptive vindictiveness. He contends

that the delay in pursuing the second probation violation until the conclusion of the assault matter constitutes objective evidence of prosecutorial vindictiveness; he also contends that vindictiveness could be inferred from the circumstances. The defendant asserts that the state was aware of the facts of the murder for hire investigation several months before the first probation violation hearing, but that the state made "it clear they did not want to prosecute until after the hearing * * *." He characterizes the result of the first probation violation hearing as "a court finding of an offense far less than that hoped for * * *," and he cites the state's delay in pursuing the second Rule 32(f) filing, as well as its "wait and see approach" with respect to that second filing, as "clear evidence of presumptive or apparent vindictiveness."

We disagree. While it is true that the state did not inform defendant during the plea bargain negotiations with respect to the assault allegations that he could also be subject to a murder for hire violation proceeding, the prosecutor stated that she was not even aware of the murder for hire investigation until sentencing began on the assault violation. As the hearing justice noted, the prosecution's "wait and see" response revealed not vindictiveness, but rather recognition that defendant's arrest "prevented the authorities from continuing their undercover investigation." The hearing justice described the situation as follows:

> "The State had to determine whether to charge the defendant based upon an investigation that they had hoped would have continued but was aborted due to his arrest on the Pettis matter. They decided to wait and see if the charges concerning Pettis resulted in further incarceration, in which case their investigation could not be continued because the defendant would be incarcerated. * * * Once it was apparent to the State that he was incarcerated on the Pettis matter, they then had to determine whether to charge him or not based upon the information they had previously gathered, because the investigation wasn't going to go much further; he was in jail."

The hearing justice ruled that the existence of an ongoing investigation of defendant with respect to an alleged murder for hire scheme did not preclude the prosecution from filing a Rule 32(f) notice with respect to the assault of Mr. Pettis. She further stated: "I don't find that [the prosecutor] negotiated the Pettis charge * * * in bad faith." She also stated that she was not convinced by defendant's argument that, if he had been violated on the grounds of assault with a dangerous weapon (rather than just the simple assault), then the state would have abandoned the murder for hire investigation: "I see no evidence of that," she remarked.

We are not persuaded by defendant's argument that the hearing justice should have dismissed the second Rule 32(f) violation because of prosecutorial vindictiveness. Having reviewed the record, it is our conclusion that the hearing justice appropriately came to the conclusion that there was no evidence that vindictiveness, either actual or presumed, motivated the decisions of the prosecutor in this case.

## B. The Finding of Probation Violation

■ The defendant's second argument on appeal is that the hearing justice erred in determining that he had violated the terms and conditions of his probation with respect to the state's contention that he had been engaged in orchestrating a murder for hire plot.

We have stated that, in a probation violation proceeding, the state need not prove beyond a reasonable doubt that an alleged probation violator committed a crime. *State v. Bouffard*, 945 A.2d 305, 313 (R.I.2008). Instead, "the presiding judicial officer need only be 'reasonably satisfied' that a defendant breached a condition of probation by failing to keep the peace or remain on good behavior." *Id.*; *see also McCarthy*, 945 A.2d at 327; *State v. Seamans*, 935 A.2d 618, 623 (R.I.2007). The focus of a probation violation hearing is not on the defendant's guilt or innocence (as a matter of criminal law) with respect to the most recent crime with which he or she has been charged; rather, the focus is on whether or not the defendant's "conduct on the day in question had been lacking in the * * * good behavior expected and required by his [or her] probationary status." *State v. Brown*, 915 A.2d 1279, 1282 (R.I.2007) (internal quotation marks omitted).

In the instant case, the hearing justice, in accordance with what is expected at a probation violation proceeding, weighed the evidence and assessed the credibility of witnesses. *See McCarthy*, 945 A.2d at 328. She addressed defendant's entrapment argument, and she reasoned that Maloney "certainly was not an unwary innocent [but rather] * * * a person of a criminal mind filled with rage over a wrong that he perceived was committed on him by [Mr.] Leonard." The hearing justice specifically found that defendant was not entrapped—and that defendant himself had been the first person to raise the idea of assaulting or killing Mr. Leonard "and that he wanted to hire someone to do so."

Although she noted that defendant's plans to hurt or kill Mr. Leonard were certainly inchoate rather than a "clos[ed] * * * deal," the hearing justice specifically pointed to: (1) defendant's meeting with a self-proclaimed hit man; (2) his provision of information to the purported hit man regarding a potential target; and (3) his discussing with both Mr. Usenia and the self-proclaimed hit man his desire to kill or hurt Mr. Leonard. She then ruled that those were all factors that justified her conclusion that she was "reasonably satisfied the defendant is a violator * * *." Although defendant asserted in the hearing that his remarks to the purported hit man constituted mere boasting, the hearing justice disagreed; she stated: "[D]efendant did considerable footwork in preparation for a possible contract on [Mr.] Leonard."

After conducting our own review of the record, we are of the opinion that the hearing justice acted neither arbitrarily nor capriciously when she determined that the evidence addressed at the probation violation hearing with respect to the murder for hire scheme was sufficient to demonstrate that defendant had violated the terms and conditions of his probation. We agree with the hearing justice that the facts presented by the state were sufficient to indicate that defendant had failed to keep the peace and remain on good behavior.

### Conclusion

For the reasons delineated in this opinion, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court.