### STATE

v.

### Kenneth Wayne PITTS.

### No. 2007–366–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2008.

---

Aaron Weisman, Providence, for Plaintiff.

Janice Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Kenneth Wayne Pitts, appeals from a Superior Court adjudication of probation violation. This case came before the Supreme Court for oral argument on November 5, 2008, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case

should be decided at this time. For the reasons set forth in the opinion below, we affirm the judgment of the Superior Court.

## Procedural History

On March 19, 1997, Pitts pled nolo contendere to one count of first-degree and one count of second-degree child sexual molestation. The trial justice sentenced Pitts to thirty-five years in prison, with seven years to serve and twenty-eight years suspended, for his conviction of first-degree child sexual molestation and thirty years in prison, with seven years to serve and twenty-three years suspended, for his conviction of second-degree child sexual molestation. The sentences were to run concurrently. Nearly ten years later, after Pitts was released from prison, but while still on probation, the state alleged that Pitts violated the terms and conditions of his suspended probationary sentence and presented Pitts as a violator under Rule 32(f) of the Superior Court Rules of Criminal Procedure.[1] After a probation-violation hearing in the Superior Court, the hearing justice concluded that Pitts had violated his probation and sentenced Pitts to serve five years of his twenty-eight-year suspended sentence. Pitts timely appealed.[2]

## Factual Background

On April 24, 2007, the father of a student at a private school on the East Side of Providence drove his son from the school's nearby athletic fields in Seekonk, Massachusetts, back to the main campus in Providence because the boy had forgotten his book bag. The day was warm and the top was down on the parent's convertible. As he waited for his son to emerge from the school building, the parent noticed a white van pull up behind him. The driver of the van appeared to be filming or taking pictures; a camera lens was pointed at the school's entrance. The parent said that his suspicions were aroused, so he took four pictures of the van, first from his own car and then from the curb after he exited his vehicle.[3] He stated that he walked up to the van until the driver "seem[ed] to get the message" and left. The parent also photographed the license plate on the van. Uneasy about the man's behavior, the parent gave the pictures to the school's security officer the next morning.

Providence Police Officer Richard Piccirillo testified that on April 25, 2007, his supervisor told him during roll call to be on the lookout for a white van, with a particular license plate number registered to Pitts, a known sex offender.[4] Officer

---

1. Rule 32(f) of the Superior Court Rules of Criminal Procedure provides that:
 "The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

2. It appears that Pitts filed his notice of appeal on the day before judgment was entered

concerning the probation violation. We have stated in the past that we treat premature appeals as timely filed, and we will continue to do so in this case. *State v. McManus*, 950 A.2d 1180, 1181 n. 2 (R.I.2008) (mem.) (citing *State v. Hesford*, 900 A.2d 1194, 1197 n. 3 (R.I.2006)).

3. The parent testified that he was within four feet of the driver as he took the picture from the curb.

4. Officer Piccirillo testified that during roll call that day his supervisor issued a "BOLO" regarding Pitts's van; a "BOLO" notifies the police officers to be on the lookout for a certain vehicle, in this case, Pitts's van.

Piccirillo said that soon after he started his shift at 3 p.m., he spotted the van parked on Cushing Street, within one block of the school's campus. He testified that he parked his cruiser behind the van and broadcasted over his radio to all of the other police cruisers in the city that he was about to conduct a traffic stop of the white van that the officers had been warned about earlier that day during roll call. Officer Piccirillo testified that as soon as he approached the partially opened driver's side window, he heard Pitts moaning and then he observed him masturbating in the driver's seat. Officer Piccirillo testified that because he was concerned for his own safety he immediately ordered Pitts to exit the vehicle before he could cover himself. He then patted Pitts down for weapons, and handcuffed him.

The state's final witness, Providence Police Officer Nicole Darling, testified that she arrived at the scene as backup to Officer Piccirillo and saw him place Pitts in the back of the patrol car. At this time, Pitts's pants were still unfastened and his penis was exposed. Officer Darling testified that during an inventory search of the van she found a video camera, a blue lunch bag, a blue knit ski mask, a used condom, a book with photos of adult women, and masking tape. She said that after she completed the inventory search, the Bureau of Criminal Investigation documented the contents of the vehicle before it was impounded.

Pitts testified in his own defense at the probation-violation hearing. He said that he was familiar with the area around the school because he was an artist who sold his work as a street merchant on nearby Thayer Street. Pitts explained that on the day before his arrest he parked outside

the school to take pictures of people as they walked away. Pitts said that he had previously taken a series of pictures of people arriving, and he contended that these new photos were going to be used for a similar series of pictures of people departing.

Pitts also said that he worked for a company called "French Design Builders." [5] He testified that on the day of his arrest, after he worked at a job site for the company in North Smithfield from 7:30 a.m. until 3 p.m., he drove to Butler Hospital in Providence, where the company had another job site. After he concluded that there was no further work to be done that day at that location, he parked his van on Cushing Street to purchase some pizza on Thayer Street. He said that when Officer Piccirillo approached his van, the window was not half open, but was raised because it was broken and could not be lowered, and that he was talking to his boss on his company cellular telephone. He insisted that he was not masturbating at the time of the arrest, and he denied that his penis ever was exposed during the encounter with the police.

Moreover, Pitts argued that even if the hearing justice believed the state's witnesses, there was no evidence that he was engaged in any criminal behavior because he had a reasonable expectation of privacy while in his van. He further argued that the police officers fabricated the entire incident because a parent from a prestigious private school saw an African–American man with dreadlocks in the school's vicinity.

After the hearing justice heard all the evidence he found the state's witnesses were being "absolutely forthright with the

---

5. Pitts testified that he had been working for the company for eleven months at the time of his arrest and that his job responsibilities included cleaning up at and transporting materials to the company's various work sites.

Court" and that Pitts's testimony was "totally unbelievable." The hearing justice concluded that there is no "expectation of privacy when you're in a motor vehicle on a public highway," and that any inappropriate behavior in a vehicle could be the basis of a disorderly-conduct charge based on G.L. 1956 § 11–45–1(a)(7).[6] The hearing justice determined that he was satisfied that Pitts had committed the acts described by the two police officers in their testimony. He also noted that he believed Pitts would be convicted of disorderly conduct.[7] However, the hearing justice said that even if Pitts's conduct did not satisfy the elements of the crime of disorderly conduct, he nonetheless found that Pitts exposed himself and that his actions clearly were inappropriate and not in keeping with the good behavior required of a probationer. Therefore, the hearing justice declared that Pitts had violated the terms and conditions of his probation. As a result, the hearing justice imposed an additional five years for Pitts to serve from his previously suspended sentence. Pitts timely appealed.

## Standard of Review

■■■ "At a probation violation hearing, the sole issue for the presiding judicial officer to consider is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. Bouffard*, 945 A.2d 305, 310 (R.I.2008) (citing *State v. Crudup*, 842 A.2d 1069, 1072 (R.I.2004)); *see also State v. Forbes*, 925 A.2d 929, 934 (R.I.2007). "The burden of proof on the state is much lower than that which exists in a criminal trial—the state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *Bouffard*, 945 A.2d at 310 (quoting *Forbes*, 925 A.2d at 934); *see also State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005). The trial justice weighs the evidence presented at the probation-violation hearing and assesses the credibility of the witnesses. *State v. Christodal*, 946 A.2d 811, 816 (R.I.2008) (citing *State v. Pena*, 791 A.2d 484, 485 (R.I.2002) (mem.)). This Court gives the trial justice's assessment of the credibility of witnesses "great deference." *Id.* (quoting *Bajakian v. Erinakes*, 880 A.2d 843, 852 (R.I.2005)). When reviewing a finding of a probation violation, "this Court considers only whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation." *Christodal*, 946 A.2d at 816.

---

6. At the time of Pitts's arrest, G.L. 1956 § 11–45–1(a)(7) provided:

> "Disorderly conduct.—(a) A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly: * * * (7) Exposes his or her genitals to the view of others under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to the other persons."

Chapter 11 of Title 45 entitled "Disorderly Conduct" was amended by the General Assembly in July 2008 by adding the following section:

> "Indecent exposure—Disorderly conduct.— (a) A person commits indecent exposure/disorderly conduct when for the purpose of sexual arousal, gratification or stimulation, such person intentionally, knowingly or recklessly: (1) Exposes his or her genitals to the view of another under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to that person." Section 11–45–2, as enacted by P.L. 2008, ch. 183, § 2.

7. The hearing justice's assessment proved to be correct because a Superior Court jury convicted Pitts of disorderly conduct in April 2008. The trial justice sentenced Pitts to six months in prison to be served consecutively with his five-year sentence for his probation violation. Pitts timely appealed his conviction; however, that appeal is not now before this Court, nor does the outcome of that appeal impact our decision in this case.

## Analysis

■ On appeal Pitts contends that: (1) the hearing justice abused his discretion and came to arbitrary and capricious conclusions when he found that the state's witnesses were credible and (2) even if this Court agrees with the hearing justice's finding that Pitts masturbated in his van, this act did not amount to disorderly conduct or a violation of the terms and conditions of his probation. After a thorough review of the record, we hold that Pitts has failed to show that the hearing justice acted arbitrarily and capriciously when he made credibility determinations and when he found that Pitts violated the terms and conditions of his probation.

Pitts contends that the situation spiraled out of control when the father of two teenagers at a prestigious, predominantly white private school misinterpreted his artistic endeavors and concluded that he was inappropriately filming children. He argues that the police officers did not want a black man festooned with dreadlocks, who happened to be a convicted sex offender, near the school, and that they were "determined to get him off the streets." Pitts also maintains that the police officers fabricated their version of events and, as a result, they were uncomfortable on the witness stand because they were testifying falsely. He also submits that there were no photographs proving that he had been engaged in a sexual act while in his car. We see utterly no merit in his arguments.

■ It is well settled that a hearing justice's credibility determinations are "conclusive unless an examination of the record discloses that he or she has misconceived or misinterpreted material evidence or that he or she otherwise was clearly wrong." *In re Harold S.*, 731 A.2d 265, 268 (R.I.1999) (citing *Donnelly v. Grey Goose Lines, Inc.*, 667 A.2d 792, 794–95 (R.I.1995)). This Court defers to a hearing justice's determination of a witness's credibility because he or she has the benefit of observing the physical appearances of the witnesses as they testify. "Our perspective is limited to analyzing words printed on a black and white record." *State v. Woods*, 936 A.2d 195, 198 (R.I. 2007) (deference to hearing justice for credibility determinations because this Court does not have the same vantage point to observe the "witness' demeanor, tone of voice, and body language"). In this case the hearing justice concluded that any discomfort displayed by the police officers while they were on the witness stand was due to the fact that "these were relatively young police officers who had observed something that was unpleasant to both of them and I think that unpleasantness came through as they tried to testify as to what happened that day." The hearing justice found Officers Piccirillo and Darling's testimony to be "absolutely forthright." By contrast, he found Pitts's testimony to be "totally unbelievable." In our opinion, the hearing justice's credibility determinations are supported by the record.

Pitts further contends that even if this Court affirms the hearing justice's finding that Pitts committed a sexual act in his van, his actions did not amount to disorderly conduct. Pitts does not concede the factual findings of the hearing justice, but he argues that even if he had engaged in such activity, he nonetheless had an expectation of privacy while he was alone in his vehicle. Indeed, he contends that casual passersby would have been able to observe only his chest and head and would not even have been able to see anything below his waist. Therefore, he argues that his actions did not constitute disorderly conduct because he did not expose himself to the public.

However, we agree with the hearing justice that under these circumstances, there is no expectation of privacy with respect to a person's behavior while occupying a motor vehicle on a public highway. Although the van's window may have been higher than the window of a passing car, anyone walking past the van would have been able to see Pitts. Further, a public bus or a school bus would have been high enough to provide a clear view of Pitts.

 Irrespective of whether Pitts could be found guilty of disorderly conduct, there was sufficient evidence for the hearing justice to conclude that he had violated his probation by failing to keep the peace and remain on good behavior. Further, it is axiomatic that the state need not prove beyond a reasonable doubt that the defendant committed a crime to support a finding of a probation violation. A probation-violation hearing focuses "on whether or not the defendant's 'conduct on the day in question had been lacking in the * * * good behavior expected and required by his [or her] probationary status.'" *State v. Maloney*, 956 A.2d 499, 507 (R.I.2008) (quoting *State v. Brown*, 915 A.2d 1279, 1282 (R.I.2007)). In our opinion, the fact that Pitts was engaged in a sexual act in a vehicle on a public highway, at a time when he was on probation for prior sex offenses, constituted a violation of the terms of his probation. Especially in light of this defendant's prior convictions for child sexual molestation, his masturbating in his van near a school undoubtedly does not meet the test of good behavior.

After our thorough review of the record, we hold that the hearing justice acted neither arbitrarily nor capriciously when he found that the evidence presented at the probation-violation hearing was sufficient to demonstrate that the defendant had violated the terms and conditions of his probation. We agree with the hearing justice that the facts presented by the state were sufficient to demonstrate that the defendant failed to keep the peace and remain on good behavior.

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.